IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| MICHAEL HUSTON, | ] |
| | ] |
| Plaintiff, | ] |
| | ] |
| v. | ] 2:15-cv-00190-KOB |
| | ] |
| BIRMINGHAM POLICE DEPARTMENT, CITY OF, | ] |
| | ] |
| Defendant. | ] |

## MEMORANDUM OPINION

This case concerns Plaintiff's allegations that City of Birmingham police officers[1] violated his rights under state and federal law in arresting him following an altercation on April 26, 2014. This matter is before the court on Defendant's Motion for Summary Judgment. (Doc. 31). Plaintiff filed a response. (Doc. 34).

**I.    Statement of Facts**[2]

---

[1] The sole remaining Defendant is the "City of Birmingham Police Department." Under federal and Alabama law, Mr. Huston may not sue the police department directly. *See Dean v. Barber*, 951 F.2d 1210, 1214–1215 (11th Cir. 1992). However, he may sue the City, and the City construed his lawsuit as one against the City of Birmingham and has litigated it accordingly. The court therefore treats Mr. Huston's claims as brought against the City.

[2] In his brief, the Plaintiff failed to respond to the Defendant's statement of undisputed facts. Therefore, the Defendants' facts are deemed admitted for the purposes of summary judgment, as set out in the court's requirements for summary judgment briefs in Appendix II, available at www.alnd.uscourts.gov under the court information for Judge Bowdre.

Additionally, Plaintiff did not include in his response his own statement of undisputed facts, nor did he submit any evidence in support of his response. Accordingly, the following facts are taken from both Defendants' undisputed facts and the court's independent examination of the record, particularly Mr. Huston's deposition.

Taken in the light most favorable to the Plaintiff, the evidence before the court shows the following. On April 26, 2014, Mr. Huston was involved in an altercation at Steps and Traditions, a Veterans Administration-run medical, rehabilitation, and mental health facility in Birmingham, Alabama. Mr. Huston was living at Steps and Traditions at the time. During the altercation, Mr. Huston cut a fellow resident of the facility with a butter knife. The Birmingham Police Department dispatched Officer Eric Burpo to the scene. When Officer Burpo arrived at Steps and Traditions and exited his vehicle, he observed a man bleeding. Officer Burpo later learned the man was Cody Carter, the individual Mr. Huston injured. Individuals at the scene pointed Officer Burpo in the direction of Mr. Huston. Officer Burpo approached Mr. Huston and asked him to sit in the backseat of his patrol car, and Mr. Huston complied.

After Officer Burpo finished interviewing Mr. Carter and two witnesses, who identified Mr. Huston as the person who cut Mr. Carter, other officers arrived at the scene. Officer Burpo then opened the door of the patrol car and asked Mr. Huston to turn around so that he could handcuff him. Mr. Huston was then handcuffed while still in the patrol car. Officer Burpo claims that he handcuffed Mr. Huston. Mr. Huston disputed at his deposition that Officer Burpo handcuffed him, but could not say which officer handcuffed him instead. Mr. Huston asked Officer Burpo if he could stand up outside of the car to be handcuffed because he had a knee injury and a back injury, but he was ignored.

Officer Burpo drove Mr. Huston to the Birmingham Police Headquarters in his patrol car. Either en route to Headquarters or upon arrival there, Mr. Huston told the officer(s) present that he could not feel his hands and asked them to loosen his handcuffs. When the patrol car arrived at Headquarters, (an) officer(s) "snatched" him out of the back seat of the car. Upon exiting the

patrol vehicle, Mr. Huston yelled out, because, according to Mr. Huston, the handcuffs were causing him pain. Inside Headquarters, Officer Burpo removed Mr. Huston's handcuffs. Mr. Huston was released without being charged with a crime.

At all relevant times, the Birmingham Police Department maintained a policy of observing the rights and dignities of individuals with whom members of the Department came into contact. The policy included not using excessive force; not falsely arresting or imprisoning individuals; not assaulting or battering individuals; not maliciously prosecuting individuals; not willfully, wantonly, and/or negligently conducting any arrest procedure; and not failing to investigate claims of excessive force. The Department did not have a policy, custom, or practice of violating individuals' constitutional rights, but maintained a policy against violating the Americans with Disabilities Act and the Rehabilitation Act of 1973. All Birmingham officers, including Eric Burpo, were trained in these policies.

All Birmingham City police officers undergo extensive training at the Birmingham Police Academy, which is accredited both by the state and by an external commission with stringent accreditation standards. The training covers all aspects of police work, including execution of search warrants, the standards for arrest and detention, and use-of-force standards. The Academy supplies officers with a copy of the Birmingham Police Department Rules and Regulations, which contains the procedures officers are to follow. These rules and regulations cover the proper use of handcuffs.

The training officers receive at the Academy teaches them to respect the constitutional and statutory rights of individuals with whom they come into contact. Birmingham City officers are taught the specific policies of the Department regarding proper arrest procedures and use of

force to effect an arrest, and are taught to use only such force as is reasonably necessary to effect a lawful arrest. All Birmingham City officers, including Officer Eric Burpo, received this training.

Mr. Huston's deposition notice included a request for document production that asked him to produce all medical records showing that he was injured. He did not present any medical records to the Defendant. Mr. Huston testified that he saw a primary care physician for a back injury prior to the April 26 incident and that he "rarely even go[es] to the doctor," that he "stay[s] fit," and that he is "in shape." (Doc. 31-2 at 34). During his deposition, Mr. Huston stated that his only claim against the City related to his being handcuffed.

## II.   Discussion

Summary judgment allows a trial court to decide cases when no genuine issues of material fact are present and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56. When a district court reviews a motion for summary judgment, it must determine two things: whether any genuine issues of material fact exist, and whether the moving party is entitled to judgment as a matter of law. *Id.*

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting FED. R. CIV. P. 56).

Once the moving party meets its burden of showing the district court that no genuine issues of material fact exist, the burden then shifts to the non-moving party "to demonstrate that

there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

In response, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material fact." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a *genuine issue for trial*.'" *Celotex*, 477 U.S. at 324 (quoting FED. R. CIV. P. 56(e)) (emphasis added).

The court must "view the evidence presented through the prism of the substantive evidentiary burden," to determine whether the non-moving party presented sufficient evidence on which a jury could reasonably find for the nonmoving party. *Anderson*, 477 U.S. at 254. The court must refrain from weighing the evidence and making credibility determinations because these decisions belong to a jury. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Further, all evidence and inferences drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. *See Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999). After both parties have addressed the motion for summary judgment, the court must grant the motion *only if* no genuine issues of material fact exist *and if* the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56.

### A.     Gender Discrimination

Mr. Huston alleges gender discrimination in violation of 42 U.S.C. § 13981, which provides a cause of action for gender-motivated violence. That section was held unconstitutional by *U.S. v. Morrison*, 529 U.S. 598 (2000), and so Mr. Huston cannot bring a claim under it.

B.     **Section 1983 Claims**

Mr. Huston alleges that the City of Birmingham violated his civil rights and asserts a cause of action under "the Civil Rights Clause of 1983 and Civil Rights Act Of 1871." (Doc. 19 at 13).  Section 1 of the Civil Rights Act of 1871 is now codified as 28 U.S.C. § 1983. *Wyatt v. Cole*, 504 U.S. 158, 164 (1992). Based on the allegations in the Amended Complaint, the court construes this claim as alleging that Birmingham City officers used excessive force in arresting Mr. Huston and falsely arrested him, in violation of his constitutional rights.

Section 1983 provides that every person, who, under color of state law, deprives another person of constitutional rights, shall be liable to that injured party. 42 U.S.C. § 1983. Under § 1983, "recovering from a municipality is limited to acts that are, properly speaking, acts 'of the municipality'—that is, acts which the municipality has officially sanctioned or ordered." *Pembaur v. Cincinnati,* 475 U.S. 469, 479-80 (1986). The Eleventh Circuit has explained that municipal liability may be based on the following: (1) the decision of a person with "final policymaking authority" for the city (*see City of St. Louis v. Praprotnik,* 485 U.S. 112, 123 (1988)); (2) an express municipal policy, such as an ordinance, regulation, or policy statement; or (3) a "'widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law'" (*see Griffin v. City of Opa-Locka,* 261 F.3d 1295, 1308 (11th Cir. 2001) (acknowledging that municipal liability can arise based on a formal policy or custom, using the quoted language from *Brown v. City of Fort Lauderdale,* 923 F.2d 1474, 1481 (11th Cir. 1991))).

1.     **Excessive Force**

Mr. Huston has failed to present evidence showing that the City of Birmingham adopted a

formal policy or well-settled custom that resulted in one of its police officers using excessive force in arresting him, as he is required to show for the City to be liable under § 1983. On the contrary, the evidence before the court demonstrates that the Birmingham Police Department maintained a policy of observing the rights and dignities of individuals with whom members of the Department came into contact. Department policy included not using excessive force, not assaulting or battering individuals, and not willfully, wantonly, and/or negligently conducting any arrest procedure. The Department did not have a policy, custom, or practice of violating individuals' constitutional rights.

Birmingham City officers are trained in these policies; the training officers receive at the Academy teaches them to respect the constitutional rights of individuals with whom they come into contact. Officers are specifically instructed in proper arrest procedures and use of force to effect an arrest, and are taught to use only such force as is reasonably necessary to effect a lawful arrest. Every officer receives a copy of the Birmingham Police Department Rules and Regulations, which contains the procedures officers are to follow in handcuffing individuals.

Thus, the City is entitled to judgment as a matter of law as to Mr. Huston's § 1983 excessive force claim.

    **2. False Arrest**

As with his excessive force claim, Mr. Huston has not shown that any policy or custom of the City caused him to be falsely arrested. The City has demonstrated that the Police Department did not have a policy, custom, or practice of violating individuals' constitutional rights but specifically maintained a policy against falsely arresting anyone, against maliciously prosecuting individuals, and against willfully, wantonly, and/or negligently conducting any arrest procedure.

Birmingham City officers are trained in these policies and the Police Academy trains all officers in the standard for arrest and detention. Mr. Huston has presented no evidence indicating otherwise.

Further, the individual officer(s) acted within City policies when they arrested Mr. Huston. After questioning witnesses and determining that Mr. Huston had cut Mr. Carter, Officer Burpo had probable cause to arrest Mr. Huston. After further evaluation, no charges were filed against Mr. Huston.

Therefore, the City is entitled to judgment as a matter of law on Mr. Huston's § 1983 false arrest claim.

### C.    Americans with Disabilities Act & Rehabilitation Act

Mr. Huston alleges violations of his rights under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a). To state a claim under Title II of the ADA, a plaintiff must show "(1) that he is a qualified individual with a disability; (2) that he was either excluded from participating in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability." *Bircoll v. Miami-Dade County*, 480 F.3d 1072, 1083 (11th Cir. 2007) (internal citation omitted). The elements of a prima facie case under the Rehabilitation Act are essentially the same except for the additional requirement that the plaintiff must show that the defendant is a recipient of federal funds. *See Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (stating that "[t]he standard for determining liability under the Rehabilitation Act is the same as that under the Americans with Disabilities Act").

Mr. Huston has not shown that he has a disability. "Whether an individual has a 'disability' within the ADA's purview turns on a determination of whether the individual has: a physical or mental impairment that substantially limits one or more of the major life activities of such individual; a record of such an impairment; or is regarded as having such an impairment." *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997) (internal citations omitted).

Mr. Huston's deposition testimony that he had a back and possibly a knee injury prior to the April 26 incident does not establish that those injuries substantially limited one or more of his major life activities; indeed, Mr. Huston testified that he "rarely even go[es] to the doctor," that he "stay[s] fit," and that he is "in shape." (Doc. 31-2 at 34). Though Mr. Huston's deposition notice included a request for production of documents of relevant medical records, he did not submit any of those records to Defendant, and has not submitted any to the court. And the court has no evidence before it showing that Mr. Huston was regarded as having an impairment causing substantial life impairment.

Accordingly, the City is entitled to judgment as a matter of law as to Mr. Huston's ADA and Rehabilitation Act claims.

### D. State Law Claims

Mr. Huston alleges violations of Alabama Code §§ 6-5-338, 6-6-26.12, 13A-2-25, 13A-2-24, 13A-2-23, 13A-2-20, 13A-14-1, 38-9c-4, and 38-9-11. None of these sections provides a civil cause of action.

Section 6-5-338 provides for immunity from tort liability for peace officers and tactical medics and imposes liability insurance requirements for private individuals or entities employing

off-duty officers. Section 38-9-11 exempts from liability for civil damages officers, agents, and employees of the Alabama Department of Human Resources who exercise their duties in good faith. Section 6-6-26.12 clarifies that the Alabama Uniform Collaborative Law Act affects neither the professional responsibility obligations of lawyers or other licensed professionals nor the obligation of a person under Alabama law to report child abuse. Section 38-9c-4 lists the rights of persons with developmental disabilities and traumatic brain injuries. None of these code provisions provides grounds for a person to bring a suit entitling him to relief.

Sections 13A-2-25, 13A-2-24, 13A-2-23, 13A-2-20, and 13A-14-1 are provisions of the criminal code; thus, Mr. Huston cannot bring a civil suit alleging violations of those code sections. Similarly, Mr. Huston cannot bring a suit alleging "[c]riminal liability of an individual for corporate conduct . . . ." (Doc. 19 at 15:10-13).

Because Mr. Huston has failed to state any claim under state law upon which relief may be granted, the City is entitled to judgment as a matter of law as to Mr. Huston's state law claims.

### III. Conclusion

The court **GRANTS** Defendant's Motion for Summary Judgment.[3] The court will enter a separate order consistent with this opinion.

**DONE** this 28th day of March, 2017.

_Karon O. Bowdre_
KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE

---

[3] Mr. Huston also alleges a violation of 12 U.S.C. § 232. (Doc. 19 at 15:14-16). This provision is nonexistent and so the court does not address it.